IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNUM LIFE INSURANCE CO.  Case No. 6:13-cv-00158-AA
OF AMERICA,  OPINION AND ORDER

      Plaintiff,

  vs.

JACK E. MARTIN,

      Defendant.

---

Robert B. Miller,
Kilmer, Voorhees & Laurick, P.C.
732 NW 19th Avenue
Portland, Oregon 97209
    Attorney for plaintiff

William C. Carpenter, Jr.
474 Willamette Street, Suite 303
Eugene, Oregon 97401
    Attorney for defendant

AIKEN, Chief Judge:

    Plaintiff Unum Life Insurance Company of America (Unum)

PAGE 1 - OPINION AND ORDER

moves to dismiss defendant Jack Martin's (Martin) counterclaim for intentional infliction of emotional distress (IIED) pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, Unum's motion is granted.

## BACKGROUND

Martin participated in a group long-term disability insurance plan (Policy), offered through Unum, with his employer Benton County. During the course of his employment, Martin became unable to work and filed a disability claim with Unum. On June 18, 2000, Martin's claim was approved and he began receiving benefits. Under the Policy, any Social Security disability income (SSDI) Martin or his family received from the Social Security Administration (SSA) was deductible from Martin's monthly benefits. The Policy also permitted Unum to deduct from Martin's monthly payments an estimated SSDI amount while the SSA's final determination of Martin's eligibility was pending. Martin subsequently applied for and was denied SSDI; he appealed that decision.

On October 15, 2004, Martin signed a reimbursement agreement (Agreement) with Unum that deferred the estimated SSDI deduction, allowing Martin to continue to receive full monthly payments from Unum until a final determination was made by the SSA. Under this Agreement, Martin was required to notify Unum within 48 hours of receiving his SSDI eligibility confirmation; he was also required

PAGE 2 - OPINION AND ORDER

to repay Unum any overpayment[1] he acquired by receiving SSA benefits. At that time, Martin granted Unum full access to any and all of his SSA information.

On March 29, 2011, Unum sent Martin a letter indicating that he would receive his SSA Award Letter within sixty to ninety days. During a June 23, 2011 conference call, the SSA advised Unum that an Award Letter was sent to Martin three months prior, advising him that he was entitled to SSDI benefits. Martin and Unum were in contact on multiple occasions in the following weeks, during which Martin notified Unum that he had not yet received his SSA Award Letter. Nevertheless, on June 27, 2011, Unum sent Martin a demand letter requesting reimbursement of the overpaid funds, as well as access to the SSDI benefit amounts of his family members.

On July 7, 2011, the SSA sent Martin a letter confirming that an Award Letter had not yet been sent. Because Martin signed a full SSA release, Unum had access to this information. Shortly thereafter, Unum cut off all benefit payments to Martin, without notice. In response, Martin filed a complaint against Unum with the Oregon Insurance Commission (OIC).

On August 5, 2011, Unum notified Martin that it would attribute his monthly benefit payments to the amount he owed to

---

[1] Any benefits Martin received from the SSA are considered "overpayments" under the Policy.

PAGE 3 - OPINION AND ORDER

offset his SSDI award and again requested access to the SSDI amounts his family members received. On August 15, 2011, Unum voluntarily entered into an agreement with the OIC, under which Unum agreed to reinstate Martin's benefit payments until he confirmed receipt of all retroactive SSDI.

On September 23, 2011, Martin received his SSA Award Letter and provided a faxed copy to Unum. On September 30, 2011, Unum requested that Martin repay any overpaid funds. On October 24, 2011, Unum began withholding Martin's benefit payments for the second time and instead applied those amounts to offset his SSDI award.

On January 2, 2012, Unum sent Martin another demand letter addressing the overpayment. Sometime that month, an Unum agent contacted Martin's wife and demanded SSDI award information regarding their adult children. To date, Martin has not refunded Unum any overpaid amounts.

On January 29, 2013, Unum filed a complaint in this Court against Martin for breach of contract. On April 5, 2013, Martin filed a counterclaim for IIED.[2] On May 24, 2013, Unum moved to dismiss Martin's IIED claim with prejudice.

---

[2] Specifically, Martin alleges a claim for "outrageous conduct and intentional infliction of emotional harm." Answer at 10. Because Oregon does not recognize IIED and outrageous conduct as separate torts, Martin's counterclaim is construed as a claim for IIED. Manusco v. Am. Family Mut. Ins. Co., 2009 WL 130259, *3 (D.Or. Jan. 16, 2009).

PAGE 4 - OPINION AND ORDER

**STANDARD OF REVIEW**

Where a counterclaim "fail[s] to state a claim upon which relief can be granted," it must be dismissed. Fed. R. Civ. P. 12(b)(6). To survive a Fed. R. Civ. P. 12(b)(6) motion, the counterclaim must have "a short and plain statement of the claim showing that the pleader is entitled to relief." Bell Atlantic v. Twombly, 55 U.S. 544, 555 (2007) (citation omitted). When ruling on a motion to dismiss, the court must accept as true the factual allegations contained in the counterclaim and draw all reasonable inferences in the counterclaimant's favor. Karam v. City of Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003). Thus, in order to proceed, the counterclaim must contain "sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Bacca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).

**DISCUSSION**

Unum argues that Martin's IIED claim fails as a matter of law because he did not and cannot allege facts sufficient to evince the requisite extraordinary transgression of socially tolerable conduct. To establish an IIED claim, Martin must allege that: (1) Unum intended to inflict severe emotional distress; (2) Unum's acts were the cause of Martin's severe emotional distress; and (3) Unum's acts constituted an extraordinary transgression of the bounds of socially tolerable

PAGE 5 - OPINION AND ORDER

conduct.  Logan v. W. Coast Benson Hotel, 981 F. Supp. 1301, 1322 (D. Or. 1997); House v. Hicks, 218 Or. App. 348, 358, 179 P.3d 736, rev. denied, 345 Or. 381, 195 P.3d 911 (2008) (citation omitted).

Courts play a "gatekeeper role in evaluating the viability of an IIED claim." Id. Determining "[w]hether conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-base basis, based on the totality of the circumstances." Id. at 358. Although "the inquiry is fact-specific, the question of whether the counterclaim defendant's conduct exceeded the farthest reaches of socially tolerable behavior is, initially, a question of law" for the court. Gordon v. Kleinfelder W., Inc., 2012 WL 844200, at *14 (D. Or. Mar. 12, 2012) (citation and internal quotations omitted).

Conduct that is merely "rude, boorish, tyrannical, churlish and mean" does not satisfy this standard. Patton v. J.C. Penney Co., 301 Or. 117, 122, 719 P.2d 854 (1986), abrogated on other grounds by McGanty v. Staudenraus, 231 Or. 532, 901 P.2d 841 (1995). Rather, "[t]he conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Logan, 981 F. Supp. at 1322 (citations omitted).

As such, as a threshold matter, the Court must determine whether Unum's alleged conduct is sufficiently "extreme and

PAGE 6 - OPINION AND ORDER

outrageous" to state an IIED claim.  Even accepting Martin's allegations as true, Unum's demands for repayment prior to Martin's SSDI award disbursement and requests for information regarding the SSDI awards of his family members were not so extreme as to go beyond all possible bounds of decency.  In fact, for the past ten years, Unum provided disability benefits to Martin and, further, Unum was entitled to recover any SSDI amounts Martin or his family received under the express terms of the Policy.  See Answer, Ex. 1 at 17-18.  Unum's pursuit of repayment and cessation of Martin's benefits, despite having access to information indicating that Martin had not yet received his SSDI award, may have been unreasonable; yet, such conduct cannot be categorized as "atrocious, and utterly intolerable in a civilized community."  Logan, 981 F. Supp. at 1322; see also Hall v. May Dep't Stores Co., 292 Or. 131, 135, 637 P.2d 126 (1981) ("[l]ack of foresight, indifference to possible distress, even gross negligence is not enough to support [IIED] recovery").

Furthermore, under Oregon law, a disability insurer is not in a fiduciary relationship with its insured.  See, e.g., Santilli v. State Farm Life Ins. Co., 278 Or. 53, 61, 562 P.2d 965 (1977).  Rather, it is well-established that the insurer-insured relationship is an arms-length encounter.  See Strader v. Grange Mut. Ins. Co., 179 Or. App. 329, 334, 39 P.3d 903 (2002); Zenor v. Standard Ins. Co., 2002 WL 31466503, at *2 (D. Or. Apr.

PAGE 7 - OPINION AND ORDER

3, 2001). Thus, recovery for emotional distress is typically not allowed in breach of contract cases.³ See Prudential Prop. & Cas. Ins. Co. v. Lillard-Roberts, 2002 WL 31495830, at *17 (D. Or. June 18, 2002) (dismissing an insured's counterclaim for outrageous conduct under analogous circumstances); Farris v. U.S. Fid. & Guar. Co., 284 Or. 453, 464, 587 P.2d 1015 (1978). In other words, "dispute[s] over insurance coverage [are] an ordinary occurrence which cannot be characterized in any sense as outrageous." Prudential Prop., 2002 WL 31495830, at *17. Martin is correct that, under certain limited circumstances not implicated here, an insurer may be liable in tort; nevertheless, "[a] difference of opinion as to the meaning and application of the terms of a contract could rarely, if ever, amount to outrageous conduct." State Farm Mut. Auto. Ins. Co. v. Berg, 70

---

³ Martin argues that the "denial of benefits can trigger a tort," especially where, as here, "the normal standards of the conduct required for an IIED claim are lowered [due to the parties' special] debtor-collector relationship." Def.'s Resp. to Mot. Dismiss at 3-6. Martin's argument is unpersuasive for three reasons. First, while the relationship between the parties is a factor to be considered, an IIED claim is not cognizable if the conduct at issue is not extreme and outrageous as a matter of law; regardless, based on the well-pleaded factual allegations in Martin's counterclaim, there is no indication that a special relationship existed in the case at bar. Second, the cases that Martin relies on in support of his assertion that the "denial of benefits can trigger a tort" are approximately 30 years old and from outside of this Circuit. Id. at 3-4. Third, even assuming these cases were relevant, they are factually distinguishable, as are the other cases that Martin relies on throughout his brief. See generally id.

PAGE 8 - OPINION AND ORDER

Or. App. 410, 418, 689 P.2d 959 (1984); see also Green v. State Farm Fire & Cas. Co., 667 F.2d 22, 24 (9th Cir. 1982).

Because the parties' dispute over the terms of the Policy and Agreement is an ordinary occurrence between an insurance company and its insured, Unum's actions were not extreme and outrageous enough to support an IIED claim. See Prudential Prop., 2002 WL 31495830, at *17. In sum, the parties' relationship was created by the Policy and Agreement, under which Unum had a right to offset monthly benefit payments by Martin's SSDI award; the fact that Unum sought to recoup these payments after Martin was approved for SSDI but before he received that award is, at most, a misinterpretation of the Policy and Agreement and therefore not actionable. Therefore, Unum's motion is granted and Martin's IIED claim is dismissed.

Finally, Martin requests leave to file an amended complaint in order to add factual allegations in support his IIED claim. See Def.'s Resp. to Mot. Dismiss at 11-12. Because motions may not be combined with any response brief, Martin's request is denied. See LR 7-1(b). Moreover, Martin's proposed amendments are inadequate to state a claim for IIED and, for the reasons discussed above, any further amendment would be likely futile. See Forsyth v. Hamana, Inc., 114 F.3d 1467, 1482 (9th Cir. 1997) (outlining factors considered in determining whether a motion to amend should be granted); Bonin v. Claderon, 59 F.3d 815, 845

PAGE 9 - OPINION AND ORDER

(9th Cir. 1995) ("[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend"). Therefore, Martin's request to file an amended complaint is denied.

## CONCLUSION

For the foregoing reasons, Unum's motion to dismiss (doc. 13) is GRANTED. Martin's IIED claim is DISMISSED. Unum's request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this / day of Aug, 2013.

_____
Ann Aiken
United States District Judge

PAGE 10 - OPINION AND ORDER