IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

      Plaintiff,

  v.

JACK E. MARTIN,

      Defendant.

Case No. 6:13-cv-00158-AA
OPINION AND ORDER

---

Robert B. Miller
Kilmer Voorhees & Laurick, PC
732 N.W. 19th Avenue
Portland, Oregon 97209
    Attorney for plaintiff

William C. Carpenter , Jr.
474 Willamette Street, Suite 303
Eugene, Oregon 97401
    Attorney for defendant

AIKEN, Chief Judge:

Plaintiff Unum Life Insurance Company of America moves for attorney fees and costs, in the amounts of $57,798 and $1,124.48, respectively, after prevailing on its breach of contract claim against defendant Jack Martin. For the reasons set forth below,

Page 1 - OPINION AND ORDER

plaintiff's motion is granted in part, in that attorney fees are awarded in the reduced sum of $31,408 and costs are awarded in full.

## BACKGROUND

Defendant participated in a group long-term disability ("LTD") insurance plan ("Policy"), offered through plaintiff, with his employer Benton County. Under the Policy, any Social Security disability income ("SSDI") received by a disabled employee or his family members from the Social Security Administration ("SSA") was deductible from monthly LTD benefits as an "overpayment." See Miller Decl. Ex. 4, at 21-23. In addition, while a final determination from the SSA regarding SSDI eligibility was pending, the Policy permitted plaintiff to deduct estimated SSDI amounts from a disabled employee's LTD payments.

During the course of his employment, defendant became unable to work and applied for LTD benefits. Plaintiff approved defendant's claim and he began receiving payments on June 18, 2000. Subsequently, defendant applied for and was denied SSDI. He appealed that decision.

On October 15, 2004, defendant signed a reimbursement agreement ("Contract") with plaintiff that deferred the estimated SSDI deduction, thereby allowing defendant to receive full monthly LTD payments until a final SSA determination was made. At that time, plaintiff agreed that he would be liable "for all reasonable costs (including attorney fees) [incurred by plaintiff in] collect[ing] [any] overpaid benefits." Miller Decl. Ex. 1.

Page 2 - OPINION AND ORDER

Defendant was eventually awarded SSDI by letter dated September 18, 2011. On September 25, 2011, defendant provided plaintiff with a copy of the SSA's award letter, which stated that defendant would receive a check for retroactive SSDI in the amount of $122,913.75. Plaintiff believed that defendant's children would also receive family SSDI payments, which were subject to the Policy's and Contract's overpayment requirements. Because plaintiff did not know the precise amount of SSDI benefits that were or would be paid to defendant's children, plaintiff made several requests to defendant to furnish copies of his family members' award letters. After these attempts failed, plaintiff estimated that defendant and his family received SSDI benefits in the amount of $186,464.33. Plaintiff subsequently began recouping this overpayment amount by withholding defendant's monthly LTD payments.

On January 29, 2013, plaintiff filed a complaint in this Court against defendant for breach of contract. On August 5, 2013, defendant filed counterclaims for intentional infliction of emotional distress ("IIED"), declaratory judgment, and breach of contract.

On August 8, 2013, the Court granted plaintiff's motion to dismiss defendant's IIED claim. On September 25, 2013, the parties tried unsuccessfully to settle their dispute via mediation. On November 5, 2013, this Court granted plaintiff's motion for summary judgment and found that defendant owed $111,148.73 in LTD overpayments resulting from his and his family's receipt of retroactive SSDI benefits. On March 19, 2014, after the parties

Page 3 - OPINION AND ORDER

filed cross-motions, the Court granted summary judgment in favor of plaintiff on defendant's remaining counterclaims.

On May 12, 2014, plaintiff filed the present motion for $58,922.48 in attorney fees and costs based on work performed by Portland attorney Robert Miller. Defendant did not file an opposition to plaintiff's motion.

## STANDARD

"Under Oregon law the prevailing party is 'entitled to reasonable attorneys' fees in addition to costs and disbursements' in any action based on a contract that specifically provides for an award of attorney's fees to the prevailing party." Copeland-Turner v. Wells Fargo Bank, N.A., 2012 WL 92957, *1 (D.Or. Jan. 11, 2012) (quoting Or. Rev. Stat. § 20.096(1)). After establishing that the contract allows for fees and which party prevailed, an award pursuant to Or. Rev. Stat. § 20.096 "is mandatory; the trial court has no discretion to deny it, although it does have discretion as to what amount is 'reasonable.'" Benchmark N.W., Inc. v. Sambhi, 191 Or.App. 520, 523, 83 P.3d 348 (2004) (citation omitted); see also Gates v. Deukmejian, 987 F.2d 1392, 1400-02 (9th Cir. 1992) (court is required to ensure an award's reasonableness, regardless of whether the opposing party objected to it). Such awards "are generally made in reference to the factors listed in O.R.S. 20.075(1) and (2)." Copeland-Turner, 2012 WL 92957 at *1.

## DISCUSSION

It is undisputed the Contract authorizes attorney fees and that plaintiff is the prevailing party. Thus, the sole remaining

Page 4 - OPINION AND ORDER

issue the reasonableness of plaintiff's petition.

I. <u>Reasonableness of the Requested Rates</u>

Plaintiff seeks $260 per hour for Miller, who has "over 23 years of experience." <u>See</u> Miller Decl. ¶¶ 4, 6; <u>see also</u> Miller Decl. Ex. 2. A reasonable rate for legal services is "calculated according to the prevailing market rates in the relevant community." <u>McElmurry v. U.S. Bank Nat'l Ass'n</u>, 2008 WL 1925119, *3 (D.Or. Apr. 30, 2008) (citation and internal quotations omitted). "This District considers the most recent Oregon State Bar Economic Survey ('OSB Survey') as its 'initial benchmark' in determining whether hourly billing rates are reasonable." <u>Prison Legal News v. Umatilla Cnty.</u>, 2013 WL 2156471, *4 (D.Or. May 16, 2013) (citations omitted).

Here, the latest OSB Survey, issued in 2012, provides billing rates by locality, years of experience, and area of practice. For a Portland attorney with 21 to 30 years of experience, the average and median rates are $326 and $333 per hour, respectively. Because it is lower than average for attorneys with commensurate experience, Miller's hourly rate of $260 is reasonable.

II. <u>Reasonableness of the Hours Expended</u>

Plaintiff requests an award of fees for 222.3 hours of work. Specifically, Miller seeks the following compensation: 8.5 hours of preliminary work, 4 hours for drafting and filing the complaint, 39.8 hours relating to defendant's IIED counterclaim, 103.1 hours for preparing and briefing the parties claims at summary judgment, 12.4 hours for assembling the present fee petition, 18.4 hours to

Page 5 - OPINION AND ORDER

keep plaintiff apprised of the lawsuit's status and perform other miscellaneous tasks, and 36.1 hours arising out of attempts to revolve, narrow, or settle the underlying issues with opposing counsel. See Miller Decl. Ex. 3.

After reviewing plaintiff's itemized fee petition and the underlying proceedings, the Court finds that reductions are warranted for three reasons.

First, this case pertained to a straight-forward breach of contract claim. The terms of the Policy and Contract are unambiguous concerning plaintiff's entitlement to offset defendant's LTD benefits by his and his family's SSDI payments. While defendant's insistence in pursuing counterclaims, especially for IIED, certainly extended the underlying litigation, no single issue was novel, difficult, or complex. In fact, plaintiff's briefs, and the Court's decisions, relied on well-established legal principles. As such, the Court finds the 142.9 hours accrued in conjunction with Miller's substantive work - i.e. the motion to dismiss and motions for summary judgment - excessive, especially in light of the fact that he frequently block-billed, making it difficult to discern the amount of time allocated to each task.[1] See Prison Legal News, 2013 WL 2156471 at *7 (striking block billed entries that "exceed[ed] three hours" because "[t]his District has specifically cautioned against [this practice, which] greatly

---

[1] The Court "divide[d] these blocks of time by the total number of included tasks" to arrive at a billing period for each of Miller's discrete undertakings. Sterling Sav. Bank v. Sequoia Crossing, LLC, 2010 WL 3210855, *5 (D.Or. Aug. 11, 2010).

Page 6 - OPINION AND ORDER

hinder[s] the court's ability to assess the reasonableness of the time expended") (citations omitted); see, e.g., Miller Decl. Ex. 3, at 21.

For instance, Miller billed 54.9 hours in association with plaintiff's first motion for summary judgment. See Miller Decl. Ex. 3, at 14-20 (8/5/2013, 8/8/2013, 8/14/2013, 8/15/2013, 8/20/2013, 8/21/2013, 8/26/2013, 8/27/2013, 8/28/2013, 9/19/2013, 9/20/2013, 9/23/2013, 9/24/2013, 9/26/2013, 10/3/2013, 10/17/2013, and 11/12/2013 entries). Yet plaintiff's initial memorandum was eight pages long, significant portions of which simply recited the Policy's and Contract's terms. See, e.g., Pl.'s Mem. in Supp. of First Mot. Summ. J. 5-7. It was also devoted entirely to damages because "[t]he Court has established that the Policy requires Martin to reimburse Unum for the benefits Martin or his family received from the Social Security Administration." Id. at 1. Miller's reply, although slightly longer at 13 pages, largely reiterated the issues raised in his opening brief. See generally Pl.'s Reply to First Mot. Summ. J.

Miller also spent 48.2 hours on plaintiff's summary judgment motion regarding defendant's counterclaims. See Miller Decl. Ex. 3, at 21-26 (11/25/2013, 12/3/2013, 12/4/2013, 12/9/2013, 12/10/2013, 12/11/2013, 12/12/2013, 12/13/2013, 12/17/2013, 12/18/2013, 1/4/2013, 1/23/2013, 1/24/2013, 1/27/2013, 2/10/2013, 2/14/2013, 2/18/2013, and 3/20/2014 entries). However, defendant's counterclaims were diametrically opposed to plaintiff's claims and based largely on the same evidentiary record. See generally Def.'s

Page 7 - OPINION AND ORDER

Mem. in Supp. of Mot. Summ J.; Pl.'s Mem. in Supp. of Second Mot. Summ. J. In other words, after plaintiff prevailed on its breach of contract claim, defendant's counterclaims for breach of contract and declaratory judgment were likely to fail. See Unum Life Ins. Co. of Am. v. Martin, 2014 WL 1154065, *1-2 (D.Or. Mar. 19, 2014) (court relying, in part, on its previous summary judgment disposition to dismiss defendant's counterclaims); see also Pl.'s Reply to First Mot. Summ. J. 1-2, 13 (rebutting defendant's counterclaim for breach of contract). Even though the Court declined to enter summary judgment against defendant's counterclaims sua sponte, plaintiff's second motion for summary judgment did not necessitate reviewing and summarizing substantial amounts of new evidence and should have involved very little additional legal research. In sum, to account for the lack of complexity involved, as well as the limited amount of legal analysis, the hours Miller billed relating to summary judgment are reduced overall by 50%. This results in a deduction of 51.6 hours from Miller's petition.

Regarding plaintiff's motion to dismiss, in March 2013, Miller billed 2.6 hours for preparing an email to defendant concerning his allegations of bad faith. See Miller Decl. Ex. 3, at 6 (3/5/2013 entry); see also Miller Decl. Ex. 6. This email "included an analysis of the same cases relied on by the Court to grant [plaintiff's] Motion to Dismiss." Miller Decl. ¶ 12; see also Unum Life Ins. Co. of Am. v. Martin, 2013 WL 3995005, *3-4 (D.Or. Aug. 1, 2013). Miller also billed an additional 37.2 hours briefing

Page 8 - OPINION AND ORDER

plaintiff's motion to dismiss, despite the fact that the opening brief was only seven pages long, contained less than two pages of legal analysis, and generally tracked his March 2013 email. <u>Compare</u> Miller Decl. Ex. 6, <u>with</u> Pl.'s Mem. in Supp. of Mot. Dismiss 4-7; <u>see also</u> Miller Decl. Ex. 3, at 6-14 (3/11/2013, 4/8/2013, 5/21/2013, 5/22/2013, 5/23/2013, 5/24/2013, 5/28/2013, 6/11/2013, 7/1/2013, 7/2/2013, 7/8/2013, 7/11/2013, and 8/2/2103 entries). The Court recognizes that, at 14 pages, plaintiff's reply to the motion to dismiss contained more legal analysis than his initial motion. <u>Compare generally</u> Pl.'s Mem. in Supp. of Mot. Dismiss, <u>with</u> Pl.'s Reply to Mot. Dismiss. Generally, this analysis entailed distinguishing precedent that defendant relied on in opposing dismissal of his IIED claim, and Miller previously addressed at least one of these cases in his March 2013 email. <u>See</u> Miller Decl. Ex. 6. The Court finds 15 hours sufficient to compensate for this task. As a result, Miller's attorney fee request is reduced by 24.8 hours.

Second, the Court cannot find the hours spent attempting to settle this dispute prior to summary judgment to be reasonable. Although the Court commends Miller's efforts to work with opposing counsel towards a resolution, the hours for mutual conferences result in nearly $10,000 worth of fees. Considering the lack of the novelty and difficulty involved, combined with the fact that the parties were ultimately unable to successfully mediate this case, the Court finds that compensating Miller for the 9.4 hours he actually spent in judicial settlement, plus an additional 10 hours

Page 9 - OPINION AND ORDER

to prepare and confer, sufficient. This culminates in a 16.7 hour deduction.

Finally, I reduce the request for fees arising out of the present motion. Generally, a party entitled to attorney fees may also recover additional amounts, or "fees on fees," necessarily incurred in obtaining an award. See, e.g., Baricevic v. Cal-Western Reconveyance Corp., 2011 WL 5358667, *3-4 (D.Or. Nov. 3, 2011). The Court acknowledges that it takes time to assemble a fee petition. Yet, at six pages, the majority of which constitutes a boiler-plate recitation of the law or facts, plaintiff's motion has very little in the way of legal analysis. See generally Pl.'s Mot. Att'y Fees; see also Precision Seed Cleaners v. Country Mut. Ins. Co., 976 F.Supp.2d 1228, 1254-55 (D.Or. 2013) (reducing hours spent on an attorney fee petition that "contain[ed] boilerplate information about Markowitz and his expertise in fee litigation [and did] not begin to address any information specific to this case until page six"). Further, Miller's billing statements were compiled electronically via a computer program employed by his firm. See Miller Decl. ¶ 9. As such, preparation of his actual invoices, along with the accompanying declaration and motion, was largely clerical. See Sterling, 2010 WL 3210855 at *7 (clerical tasks, such as "filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents" are not compensable); see also Baricevic, 2011 WL 5358667 at *4 (describing the preparation of an

Page 10 - OPINION AND ORDER

attorney fee petition as "non-substantive simple [work] that required little in the way of specialized skills"). The Court therefore finds 4 hours adequate to compensate for the present motion. Accordingly, Miller's petition is reduced by 8.4 hours.

After taking the above-listed deductions, 120.8 hours of Miller's time is awarded at $260 per hour, for a total of $31,408 in attorney fees. In arriving at this sum, the Court considered the pertinent factors outlined in Or. Rev. Stat. § 20.075 and finds that no further adjustments are necessary.

III. Costs

Plaintiff seeks to recover an additional $1,124.48 in costs; this amount includes fees for photocopies, court filings, service of the summons and complaint, printing, postage, and UPS overnight delivery. See generally Pl.'s Bill of Costs. Costs are generally awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise. See Fed. R. Civ. R. 54(d). The expenses which may be taxed as costs are enumerated in 28 U.S.C. § 1920 and include any reasonable "out-of-pocket expenses . . . that would normally be charged to a fee paying client." Nat'l Warranty Ins. Co. v. Greenfield, 2001 WL 34045734, *9 (D.Or. Feb. 8, 2001) (citation and internal quotations omitted).

In this case, the requested costs all fall within the purview of 28 U.S.C. § 1920 and appear within plaintiff's billing statements. See Miller Decl. Ex. 3. Moreover, Miller stipulated that plaintiff "has paid all of the . . . costs listed on [his] invoices." Miller Decl. ¶ 3. Costs are therefore awarded in full.

Page 11 - OPINION AND ORDER

## CONCLUSION

Plaintiff's bill of costs (doc. 76) is GRANTED. In addition, plaintiff's motion for attorney fees (doc. 73) is GRANTED in part, such that plaintiff is awarded a total of $32,532.48 in attorney fees and costs.

IT IS SO ORDERED.

Dated this 1st of July, 2014.

_____
Ann Aiken
United States District Judge